IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEANNETTE JARRETT,                          :
                                            :
            Plaintiff,                      :        CIVIL ACTION
                                            :
      v.                                    :        NO. 21-1607
                                            :
KILOLO KIJAKAZI,[1] ACTING                  :
COMMISSIONER OF THE                         :
SOCIAL SECURITY                             :
ADMINISTRATION,                             :
                                            :
            Defendant.                      :
                                            :

## MEMORANDUM OPINION

      Jeannette Jarrett ("Jarrett" or "Plaintiff") seeks review, pursuant to 42 U.S.C.

§ 405(g), of the Commissioner of Social Security's ("Commissioner") decision denying her

claim for Supplemental Security Income ("SSI").[2]  For the reasons that follow, Jarrett's Request

for Review will be denied.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

      Jarrett was born on July 14, 1969.  R. at 32.[3]  She has a high school education and can

speak and understand English.  Id. at 32, 194.  She has no past relevant work.  Id. at 32.  On

---

[1]    Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on
July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi
should be substituted for the former Commissioner, Andrew Saul, as the Defendant in this
action.  No further action need be taken to continue this case pursuant to Section 205(g) of the
Social Security Act.  42 U.S.C. § 405(g).

[2]    In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the
undersigned United States Magistrate Judge conduct proceedings in this case, including the entry
of final judgment.  See Doc. Nos. 3, 10.

[3]    Citations to the administrative record will be indicated by "R." followed by the page number.

February 14, 2019, Jarrett filed her sixth application for SSI pursuant to Title XVI of the Social

Security Act.  Id. at 22, 57.  She alleged that she became disabled on January 1, 2016, due to

chronic pain and mental impairments.  Id. at 22, 27, 210.  The application was initially denied on

October 23, 2019.  Id. at 22.  Jarrett then filed a written request for a hearing on April 27, 2020.

Id.  A telephone hearing regarding the denial of her SSI application was held before an

Administrative Law Judge ("ALJ") on August 4, 2020.  Id.  On September 10, 2020, the ALJ

issued a decision finding that Jarrett was not disabled.  Id. at 34.  The Appeals Council denied

Jarrett's request for review, thereby affirming the decision of the ALJ as the final decision of the

Commissioner.  Id. at 1-4.  Jarrett then commenced this action in federal court.

## II.     **THE ALJ'S DECISION**

In his decision, the ALJ found that Jarrett suffered from the following severe

impairments: fibromyalgia, depression, anxiety, post-traumatic stress disorder, degenerative disc

disease of the cervical and lumbar spine, degenerative joint disease of the knees and ankles,

bursitis of the right hip, and asthma.  Id. at 24.  The ALJ did not find that any impairment, or

combination of impairments, met or medically equaled a listed impairment.  Id. at 25.  The ALJ

determined that Jarrett retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except frequent climbing
> stairs, balancing, bending, kneeling, crawling, and crouching. Occasionally climb
> ladders and scaffolds. Occasionally interact with coworkers and supervisors. Avoid
> concentrated exposure to wet, humid, fumes, odors, hazardous machinery and
> unprotected heights. No complex or detailed duties or instructions.

Id. at 26.

Relying on the vocational expert who appeared at the hearing, the ALJ found that there

were jobs that existed in significant numbers in the national economy that Jarrett could perform,

such as price marker, hand stuffer, or sorter.  Id. at 32-33.  Accordingly, the ALJ found that

Jarrett was not disabled.  Id. at 34.

### III.   JARRETT'S REQUEST FOR REVIEW

In her Request for Review, Jarrett contends that the ALJ's decision was not supported by substantial evidence because the ALJ failed to properly evaluate the medical evidence and address all of the supporting evidence in the record.

### IV.   SOCIAL SECURITY STANDARD OF REVIEW

The role of the court in reviewing an administrative decision denying benefits in a Social Security matter is to uphold any factual determination made by the ALJ that is supported by "substantial evidence."  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985).  A reviewing court may not undertake a de novo review of the Commissioner's decision to reweigh the evidence.  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986).  The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact."  Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

Substantial evidence is a deferential standard of review.  See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Substantial evidence "'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988)); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks

omitted).  The court's review is plenary as to the ALJ's application of legal standards.

Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period.  42 U.S.C. § 423(d)(1); accord id. § 1382c(a)(3)(A).  As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial  gainful activity, we will find that you are not disabled.  (ii) At the second step, we  consider the medical severity of your impairment(s).  If you do not have a severe  medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the  duration requirement, we will find that you are not disabled.  (iii) At the third step, we  also consider the medical severity of your impairment(s).  If you have an impairment(s)  that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled.  (iv) At the fourth step, we  consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v) At  the fifth and last step, we consider our assessment of your residual functional capacity  and your age, education, and work experience to see if you can make an adjustment to  other work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted); accord id. § 416.920.

## V.    DISCUSSION

### A.    Substantial Evidence Supports the ALJ's Decision to Assign Partial Weight to the Opinion of Jarrett's Treating Rheumatologist

Jarrett argues that the ALJ's RFC assessment was not supported by substantial evidence because the ALJ did not properly evaluate the opinion of her rheumatologist, Arundathi Jayatilleke, M.D.  Pl.'s Br. (Doc. No. 11) at 7-9.

Under applicable regulations and controlling case law,[4] when considering a medical opinion, the ALJ is not required to give any "specific evidentiary weight, including controlling weight" to any one opinion. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." Id. § 404.1520c(a)-(c). The ALJ must "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. § 404.1520c(a). The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability. Heisey v. Saul, No. 20-324, 2020 WL 6870738, at *9 (E.D. Pa. Nov. 23, 2020). "The more relevant the medical evidence and supporting explanations provided by a medical source are to support his or her medical opinion . . . , the more persuasive the medical opinion . . . ." 20 C.F.R. § 404.1520c(c)(1). In addition, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion . . . will be." Id. § 404.1520c(c)(2).

Dr. Jayatilleke treated Jarrett at Temple Rheumatology every four to six months since 2012. R. at 970. On July 15, 2020, Dr. Jayatilleke opined that Jarrett could stand or walk less than two hours in an eight-hour day, sit up to six hours in an eight-hour day, and lift up to 10

---

[4]    The Commissioner made "sweeping changes" to the rules regarding the evaluation of medical opinion evidence that became effective on March 27, 2017. Lepperd v. Berryhill, No. 16-02501, 2018 WL 1571954, at *6 n.10 (M.D. Pa. Feb. 20, 2018) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017)), report and recommendation adopted, No. 16-2501, 2018 WL 1566662 (M.D. Pa. Mar. 30, 2018). Those changes abandoned the treating-physician rule. See 20 C.F.R. § 404.1520c. Because Jarrett filed her application for SSI benefits after March 27, 2017, all medical opinions will be evaluated in accordance with the changed rules.

pounds occasionally.  Id. at 971-72.  She indicated that Jarrett needs unscheduled five-minute breaks during an eight-hour workday, would likely be absent from work more than four days a month as a result of her impairments or treatment, and must use a cane or assistive device while engaging in standing or walking.  Id. at 971-73.

The ALJ found Dr. Jayatilleke's opinion "partially persuasive."  Id. at 32.  The ALJ explained that Dr. Jayatilleke's opinion regarding Jarrett's ability to sit for six hours during an eight-hour day was supported by rheumatology records demonstrating normal physical examination findings, except for tenderness in the spine and joints and small impairments in the right knee.  Id.  The ALJ determined that Dr. Jayatilleke's opinion that Jarrett needed a cane to walk was unpersuasive because "the treatment records do not contain any discussion about [Jarrett's] problems with balance, falls, or the need for a cane."  Id.

The ALJ's determination regarding the persuasiveness of Dr. Jayatilleke's opinion concerning Jarrett's ability to sit for six hours is supported by its consistency with treatment records and other medical opinions.  Records from Temple Rheumatology indicate that Jarrett had tenderness in her spine, pelvic joints, and hips and pain in her knees but otherwise normal examination findings.  Id. at 906.  Other physical examinations completed during visits to the hospital and chiropractor generally resulted in normal findings regarding Jarrett's musculoskeletal system, with tenderness and spasms noted.  Id. at 417-18, 421-22, 437-38, 443, 478, 491, 841, 852.  Moreover, state agency medical consultants James Butcofski, M.D. and Minda Bermudez, M.D. both opined that Jarrett could sit for six hours in an eight-hour day.  Id. at 64, 82.  Thus, substantial evidence supports the ALJ's finding that Dr. Jayatilleke's opinion regarding Jarrett's ability to sit was persuasive.

The ALJ's finding that Dr. Jayatilleke's opinion regarding Jarrett's need for a cane was

unpersuasive is supported by the opinion's inconsistency with treatment records.  Although Dr. Jayatilleke checked the box that Jarrett must use a cane when engaging in occasional walking or standing, there is no indication that Jarrett has ever been issued a prescription for a cane or was told by a physician that she medically required one.  Jarrett also stated that she did not know if a cane was prescribed to her.  Id. at 208.  At the hearing, she told the ALJ that she used the cane for balance and out of fear that she would fall without it.  Id. at 52.  However, Jarrett has also presented to providers without a cane and had no risk of falls during visits to the Emergency Room in 2017 and 2018.  Id. at 447, 481, 843.  Although some treatment records and consultative examiner Andrea Woll, D.O. indicated that Jarrett had an antalgic gait, the record does not contain any suggestion that Jarrett required a cane because of this gait or that she has received treatment for balance issues or for falls.  Id. at 526, 703, 906.  Jarrett argues that Dr. Woll's checking of a box indicating the use of a cane is medically necessary demonstrates a lack of support for the ALJ's findings.  Pl.'s Br. at 7; Pl.'s Reply Br. (Doc. No. 13) at 6.  On the contrary, Dr. Woll accompanied the box indicating that Jarrett required a cane to walk with a note that "[s]he declined to walk without it."  R. at 707.  Because the treatment records demonstrate that Jarrett's use of a cane was not the result of a medical necessity, the ALJ's finding that Dr. Jayatilleke's opinion was unpersuasive is supported by substantial evidence.[5]

Jarrett argues that the ALJ erred in improperly valuing the perspective of a "[t]reating [s]ource" by failing "to take note of the nearly a decade that [Jarrett] has treated with Dr.

---

[5]    Jarrett further contends that the ALJ "gave so little attention" to the rheumatology records that he spelled Dr. Jayatilleke's name wrong.  Pl.'s Br. at 7.  While the ALJ did not spell Dr. Jayatilleke's name correctly (identifying her instead as "Arundethi Jayahleeme"), there is no indication that the ALJ failed to properly consider Dr. Jayatilleke's treatment records.  R. at 32. Here, Jarrett's attempt to construe a mere misspelling as a broad failure by the ALJ to fulfill his duties is without merit.

Jayatilleke or the fact that Dr. Jayatilleke is a specialist in rheumatology." Pl.'s Br. at 7-8 (internal citations omitted). However, because Jarrett applied for SSI after March 27, 2017, the controlling weight formerly given to a treating opinion no longer applies. See 20 C.F.R. § 404.1520c. Instead, the ALJ was required to weigh all medical providers' opinions based on their persuasiveness—in which supportability and consistency are the most important factors— not the nature of their relationship with the claimant. Id. § 404.1520c(a).

Jarrett further maintains that remand is required because the ALJ failed to cite to contributing factors, including the length of the treatment relationship and the frequency of examinations, in his assessment of Dr. Jayatilleke's opinion. Pl.'s Reply Br. at 3. However, while an ALJ is required to "consider" all five of the factors used to determine the persuasiveness of a medical opinion, he or she must only explicitly discuss the two most important factors: consistency and supportability. 20 C.F.R. § 416.920c(2). Because the ALJ explained that the treatment records were only partly consistent with and supportive of Dr. Jayatilleke's opinion, his duty was satisfied under the regulatory requirements.

To support her argument that Dr. Jayatilleke's opinion was improperly considered, Jarrett contends that substantial evidence does not support the ALJ's findings regarding the medical opinions of the state agency medical consultants. Pl.'s Br. at 8. Jarrett alleges that the opinions of Drs. Butcofski and Bermudez should not have been found persuasive because the physicians "have no relationship with [her], have never examined [her], and are not identified as specialists in any area, let alone an area relevant to [her] medical impairments." Id.

On October 23, 2019, Dr. Butcofski opined that Jarrett could perform light work with postural and exertional limitations. R. at 31, 64-65, 68. He found that Jarrett could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, and stand or walk and sit for six hours

8

during an eight-hour day.  Id. at 64.  He further determined that Jarrett could frequently balance and climb ramps and stairs and could occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds.  Id.  The postural limitations were based on Jarrett's "[a]lleged balance issues and marked fatigue."  Id.  On April 13, 2020, Dr. Bermudez opined that Jarrett could perform light work with the same exertional limitations detailed by Dr. Butcofski.  Id. at 31, 81-83, 86.  In terms of postural limitations, Dr. Bermudez found that Jarrett could frequently climb ropes and stairs, balance, stoop, kneel, crouch, and crawl and occasionally climb ladders, ropes, and scaffolds.  Id. at 82.  The ALJ determined that Drs. Butcofski and Bermudez's opinions were persuasive because they were "supported by reasonable explanations and consistent with the record as a whole, including diagnostic studies and findings on exams."  Id. at 31.

The ALJ's finding that these opinions were persuasive is supported by their consistency with treatment records from Temple Rheumatology, Excel Medical Center, Hahnemann Hospital Emergency Department and Radiology Department, and Advanced Recovery Chiropractic Center.  As discussed supra, Jarrett's physical examinations indicated largely normal results in terms of her musculoskeletal system, with tenderness and pain noted in some joints.  Id. at 417-18, 421-22, 437-38, 443, 478, 491, 841, 852.  Her pain improved with medication, which provided her enough relief "to make a real difference in [her] life."  Id. at 559-63.  In 2018, diagnostic exams showed that Jarrett had minimal degenerative changes in her cervical spine and no changes in her lumbar spine when compared to 2016.  Id. at 515-16.  Diagnostic x-rays of her shoulders, knees, hips, and pelvis were also normal.  Id. at 757-61.  Records from chiropractor visits in 2017 demonstrate that Jarrett's reflexes and range of motion in her shoulders, wrists, and elbows were normal.  Id. at 417-18, 421-22, 437-38.  These examinations from various providers

since Jarrett's date of alleged disability are consistent with Drs. Butcofski and Bermudez's opinions that Jarrett could sit and stand or walk for six hours during an eight-hour day, frequently lift 10 pounds, and frequently balance and climb stairs or ramps. Thus, the ALJ's finding of persuasiveness is supported by substantial evidence.

Drs. Butcofski and Bermudez's opinions are also consistent with and supported by Jarrett's activities of daily living. Jarrett showers, bathes, and dresses herself, goes shopping once a month, and goes to medical appointments, the pharmacy, and her mother's alone. Id. at 203-05. She lives alone in a home in which she must walk up two flights of steps to access the restroom. Id. at 202, 547, 701. These activities are consistent with the physicians' opinions that Jarrett can complete light exertional work with some limitations.

As discussed supra, the consistency and supportability of the opinions are the most important factors in determining their persuasiveness, not the treating relationship or specialization. Heisey, 2020 WL 6870738, at *9. The ALJ was required only to consider the five factors for determining persuasiveness outlined in 20 C.F.R. § 416.920c; although he did not identify the other factors explicitly, there is no indication that he did not consider them in finding that Drs. Bufcoski and Bermudez's opinions were persuasive. Here, Jarrett's argument that the ALJ's finding was improper because of the physicians' lack of relationship with her, lack of physical examinations performed, and lack of specialization in her impairments fails.

Jarrett further contends that the ALJ engaged in "speculative behavior" because he did not explain what "reasonable explanations" supported the persuasiveness finding. Pl.'s Br. at 8-9; Pl.'s Reply Br. at 2-3. She alleges that the ALJ provided only "threadbare reasoning" for his findings of persuasiveness and "no illumination" for how the medical opinions are supported. Pl.'s Br. at 8. However, the ALJ's failure to specifically identify the explanations supporting his

persuasiveness findings does not indicate that the ALJ did not have substantial evidence to support those findings.  An ALJ is required neither to articulate how he or she considered all of the persuasiveness factors in an RFC analysis nor to cite to every supportive document in the record.  Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001) ("[W]e do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records[.]  [W]e do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his [or her] responsibilities under the regulations and case law."); 20 C.F.R. §§ 416.920c(b)(1)-(2) (stating that the ALJ will explain how he or she considered only the supportability and consistency factors for a medical source's medical opinion); see also Phillips v. Barnhart, 91 Fed. Appx. 775, 780 n.7 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it").  Here, the ALJ explicitly considered the supportability and consistency factors relative to Drs. Butcofski and Bermudez's opinions by stating that the opinions were supported by reasonable explanations and consistent with the record as a whole.  R. at 31.  The ALJ had no further responsibility to cite to specific evidence.

**B.**     **The ALJ Did Not Improperly Cherry Pick Facts**

Jarrett next argues that the ALJ "violated the standard he himself set in cherry-picking less probative facts and rejecting the more salient facts."  Pl.'s Br. at 9.  To support this contention, Jarrett lists facts the ALJ identified as supportive and those he did not rely on, suggesting that the ALJ's "[choice] to highlight" some over others was improper.  Id. at 9-11.  She demands a remand because the ALJ "failed to . . . fully consider and account for all of the evidence in his decision."  Id.  Jarrett further states that she is not "requesting the Court to

reweigh the evidence" but is "requesting the Court to reweigh the ALJ's decision."  Pl.'s Reply Br. at 4.

Contrary to Jarrett's assertion, it appears she is indeed requesting the Court to reweigh the evidence de novo, which it is not permitted to do.  Monsour Med. Ctr., 806 F.2d at 1190. The Court will not engage in an exercise that requires it to reweigh evidence.  Rather, this Court is authorized only to determine whether substantial evidence exists to support the ALJ's findings. Torres v. Barnhart, 139 F.App'x 411, 413 (3d Cir. 2005).  Here, as established supra, substantial evidence supports the ALJ's decision.

Jarrett also contends the Commissioner's citations in her Response Brief in this matter are "an attempt to bolster the ALJ's opinion" and that the ALJ "could have cited" the evidence but did not.  Pl.'s Reply Br. at 4 (emphasis in original).  Jarrett suggests the lack of citation reveals that the ALJ did not review all of the evidence.  Id. ("If the ALJ had reviewed the record in the way the [Commissioner] argues he could have reviewed it, then [the Commissioner's] citations would have been to the ALJ's decision, illustrating how the decision was grounded in the facts of the case.  However, the [Commissioner] is not citing to the ALJ's opinion because it cannot; [the Commissioner] is citing to facts that the ALJ failed to raise." (emphasis in original)). Despite these contentions, "[t]here is no requirement that the ALJ discuss in [his or her] opinion every tidbit of evidence included in the record."  Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  Nor does "the ALJ's mere failure to cite specific evidence . . . establish that the ALJ failed to consider it."  Phillips, 91 F. App'x at 780 n.7 (citations omitted).  The fact that the Commissioner cited evidence in her Response Brief that the ALJ did not cite in his decision does not mean the ALJ did not consider that evidence in his decision.  Consequently, Jarrett's argument must fail.

VI.     **CONCLUSION**

For the reasons set forth above, this Court finds that the ALJ's decision is supported by

substantial evidence.  Therefore, Plaintiff's Request for Review will be denied and dismissed.

An appropriate order follows.

Dated: December 29, 2021

                                        BY THE COURT:


                                        */s/ Marilyn Heffley*
                                        MARILYN HEFFLEY
                                        UNITED STATES MAGISTRATE JUDGE